392 A.2d 732

**COMMONWEALTH of Pennsylvania**

v.

**Thomas V. JAMES, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 8, 1976.

Decided Oct. 20, 1978.

Kenneth D. Brown, Assistant Public Defender, Williamsport, for appellant.

Allen E. Ertel, District Attorney, Williamsport, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the Commonwealth failed to produce sufficient evidence to sustain his conviction for obtaining a motor vehicle by fraud.[1] Because we agree, we reverse the judgment of sentence and order appellant discharged.[2]

On December 11, 1974, Bill Fry Ford, Inc., a Montoursville, Lycoming County automobile dealer, filed a private criminal complaint in which it accused appellant of fraudulently obtaining possession of a rental vehicle by agreeing to pay the rental charges when appellant, in fact, did not intend to pay such charges. On December 31, 1974, the Lycoming County District Attorney approved this charge.[3] On August 11, 1975, appellant's jury trial in the Lycoming County Court of Common Pleas commenced, and the Commonwealth adduced the following testimony.

1. The Vehicle Code, Act of April 29, 1959, P.L. 58, § 1220; 75 P.S. § 1220. After the date of the events giving rise to the instant criminal charges, the legislature redrafted the Vehicle Code. *See* The Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1 et seq., eff. July 1, 1977; 75 Pa.C.S. § 101 et seq. The legislature did not include a section comparable to 75 P.S. § 1220 in the new Vehicle Code.

2. Appellant also contends that (1) the Commonwealth violated Pa.R. Crim.P. 1100; 19 P.S. Appendix, (2) the lower court's charge that failure to make rental payments constituted a *prima facie* violation of the statute contravened the due process clauses of the United States and Pennsylvania constitutions, and (3) the lower court erred in refusing to charge the jury that criminal courts should not be used as bill collection agencies and in refusing to allow a defense witness to explain the availability of alternative civil remedies. Because of our disposition of the instant case, we need not consider these contentions.

3. The Commonwealth and appellant disagree as to the significance of the date of the District Attorney's approval for purposes of Rule 1100. We intimate no opinion on this issue. *See* footnote 1, *supra*.

Max Hyde, an employee of Bill Fry Ford, Inc., testified that on September 18, 1974, appellant and the complainant executed an automobile lease agreement which set forth the terms and conditions for a three day rental of a 1974 Ford Maverick. On the rental agreement, appellant gave his name, address, telephone number, driver's license number, and the name, address, and telephone number of his employer. After completing the necessary forms, appellant received possession of the rented car. On September 20, 1974, the day before the expiration of the three day rental period, appellant's wife telephoned Hyde and requested a two week extension. Hyde responded that he would agree to the extension provided that either appellant or his wife immediately produced additional money as a deposit; neither appellant nor his wife did so. Furthermore, appellant did not return the rented car on September 21, 1974, the final day of the rental period. Hyde had no further oral or written communication with either appellant or his wife until October 10, 1974, when Hyde repossessed the rented car. He found the car parked in a driveway adjacent to appellant's house. Only appellant's wife was present.

Claire Kaufman, the complainant's rental manager, testified that after the expiration of the rental term, he tried unsuccessfully to contact appellant by telephone "several times." Following the October 10, 1974 repossession, he mailed appellant a bill for $339.05, the rental charges which had accrued between September 18, 1974, and October 10, 1974. From October to December, 1974, Kaufman did not hear from appellant, and two more attempts to contact appellant by telephone failed. Finally, on December 11, 1974, he filed the instant private criminal complaint on behalf of his employer.

Following the overruling of his demurrer, appellant presented the following testimony. When he rented the 1974 Ford Maverick, appellant planned to use this automobile on a business trip. However, he changed his mind, took the family car on the trip, and left the rented vehicle with his wife. The business trip, originally scheduled to last only

"a couple of days" extended into early December, 1974. Appellant had no contact with his wife until Thanksgiving when they spoke over the telephone; his wife did not relay an information to appellant concerning the rented automobile bill. Indeed, appellant assumed that his wife had returned the car to the rental agency upon the expiration of the lease. Moreover, appellant never received any correspondence from Bill Fry Ford, Inc., pertaining to the car rental bill. Appellant first learned of the continuing car rental problem when a constable personally served him with an arrest warrant on February 11, 1975.

On cross-examination, appellant admitted that he signed the rental agreement with full knowledge that the lease term would expire on September 21, 1974. However, he reiterated that he never considered contacting Bill Fry Ford, Inc. while he was on the business trip because he assumed that his wife had returned the car.

At the conclusion of trial, the jury returned a verdict of guilty. The lower court denied appellant's written post-verdict motions and, on February 9, 1976, sentenced appellant to a one year term of probation conditioned upon compliance with various terms, including restitution of the amount of money owed the complainant. This appeal followed.

Appellant contends that the Commonwealth did not produce sufficient evidence to sustain his conviction for obtaining a motor vehicle by fraud. In *Commonwealth v. Holquin*, 254 Pa.Super. 295, 385 A.2d 1346, 1350 (1978), our Court recently reiterated the accepted standards for assessing a contention of insufficient evidence. " '[T]he test of sufficiency of evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.' *Commonwealth v. Carbonetto*, 455 Pa. 93, 95, 314 A.2d 304, 305 (1974). *See also Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972). Furthermore, as verdict winner, the Commonwealth is enti-

tled to have the evidence viewed in a light most favorable to it. *Commonwealth v. Long*, 460 Pa. 461, 333 A.2d 865, 866 (1975); *Commonwealth v. Rife*, 454 Pa. 506, 509, 312 A.2d 406 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 404, 272 A.2d 886 (1971). Finally, guilt must be proved and not conjectured. The reasonable inference of guilt must be based on facts and conditions proved, not solely on suspicion or surmise. *Commonwealth v. Bausewine*, 354 Pa. 35, 41, 46 A.2d 491, 493 (1946); *Commonwealth v. Navarro*, 251 Pa.Super. 125, 380 A.2d 409 (1977)." Using these standards, we must now determine whether the Commonwealth has proved beyond a reasonable doubt all elements of the crime of obtaining a motor vehicle by fraud.

The statute under which appellant was convicted provides:

"Any person who shall, with intent to defraud the owner of any motor vehicle or any person in lawful possession thereof, obtain possession of such motor vehicle by agreeing to pay a rental for the use thereof, based in whole or in part upon the distance such motor vehicle shall travel, shall, upon conviction thereof, be deemed guilty of a misdemeanor, and punished by imprisonment in the county jail for not less than thirty (30) days nor more than one (1) year, or by a fine of not less than twenty-five dollars ($25.00), nor more than two hundred dollars ($200.00), or both, in the discretion of the court. The refusal to pay the rental for such motor vehicle, or absconding without paying or offering to pay such rental, shall be prima facie evidence of the intent to defraud."

Under this statute, the Commonwealth bears the burden of proving beyond a reasonable doubt that at the time the lessee received possession of the rental vehicle, he intended to defraud the lessor by using the car without paying the accrued rental charges based, in part, on the car's mileage. Appellant specifically contends that the Commonwealth failed to meet its burden of proof on this element of the offense.

In the instant case, the Commonwealth has shown no direct evidence of appellant's alleged fraudulent intent at

the time of the rental transaction. Instead, the Commonwealth relies upon the standardized inference contained in the last sentence of the statute to furnish circumstantial evidence of appellant's fraudulent intent beyond a reasonable doubt. For this inference to be operative, one of two conditions must be met: the accused must have either (1) refused to pay the accrued rental charges or (2) absconded without paying or offering to pay these charges. We must evaluate whether the Commonwealth has satisfied the demands of either section sufficiently to obtain the benefit of a permissible standardized inference.[4]

The first condition requires the Commonwealth to show that appellant *refused* to pay the accrued rental charges. In order to demonstrate a refusal to pay for a rental vehicle, the Commonwealth must show more than a mere failure to pay; a refusal embodies both a communicated request and an actual negative response. In the case at bar, there is no evidence that the lessor notified appellant about the accrued rental charges or that appellant refused to pay in the face of a request to remit the charges due on the rented car. To the contrary, the record demonstrates that appellant did not receive any notification of the accrued rental charges until after the initiation of criminal proceedings.

Alternatively, the second condition requires the Commonwealth to demonstrate that appellant *absconded* without paying or offering to pay for the rental vehicle. Under this condition, mere failure to pay or offer to pay suffices to permit the invocation of the standardized inference if and only if the lessee *absconded*. We believe that the legislature intended the act of absconding to entail implicitly fleeing *with the rented car*. The purpose of the statute in question is ". . . to define, and provide punishment for, a species of fraud—the renting of an automobile upon a mileage basis when the renter had, in fact, no intention of paying for its use." *Metzger v. Hertz Drivurself Stations,*

---

4. For a discussion of the operative effect of a permissible standardized inference, *see Commonwealth v. DiFrancesco,* 458 Pa. 188, 193–94 n. 3, 329 A.2d 204, 207 (1974); *Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974).

112 Pa.Super. 365, 371, 171 A. 118, 121 (1934).[5] To find a prima facie violation of the statute when a lessee "absconds" without the rental car does not serve this legislative purpose; the lessee has left the car behind and has not gained the benefit of its use. Moreover, the strength of the probative link between "absconding" without the rental car and an alleged intent to defraud *using* the car without paying for it is tenuous at best. We do not believe that the legislature meant to convert this dubious link into prima facie evidence of a statutory violation.[6] In the case at bar, the Commonwealth has produced no evidence that appellant absconded *with the rental car.* Therefore, the Commonwealth has failed to satisfy the second condition allowing reliance upon the permissible statutory inference.

Because the Commonwealth's attempt to prove appellant's intent to defraud depends upon the applicability of the inference created by the last sentence of the statute in question and because we have concluded that the statutory inference is inoperative under the circumstances of this case, we hold that the Commonwealth did not produce sufficient evidence to sustain appellant's conviction. *See also Commonwealth v. Horton,* 465 Pa. 213, 348 A.2d 728 (1975). We reverse the judgment of sentence and order appellant discharged.

Judgment of sentence vacated and appellant discharged.

JACOBS, President Judge, concurs in result.

SPAETH, J., files a concurring opinion, in which CERCONE, J., joins.

**5.** Although decided in 1934, *Metzger* interpreted a statutory provision identical to that encoded in the 1959 Vehicle Code. *See* The Act of April 7, 1927, P.L. 131; 75 P.S. § 1252.

**6.** If we reached the opposite conclusion and found the inference to be applicable in the case at bar, we would be obliged to consider appellant's contention that grounding a conviction upon this inference alone would violate due process under both the federal and state constitutions. *See, e. g., Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Commonwealth v. DiFrancesco, supra; Commonwealth v. Turner, supra.*

PRICE, J., dissents.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

The decision in this case was made prior to the retirement of HOFFMAN, J.

SPAETH, Judge, concurring:

I believe a preliminary question presented is: Does Pa.R. Crim.P. 1100 start to run from the date on which a private criminal complaint is filed with and approved by an issuing authority, or from the date (some 20 days later) on which an attorney for the Commonwealth approves the complaint?

As the majority opinion indicates, appellant rented a car from Bill Fry Ford, Inc. The car was returned, but Ford calculated that additional rental fees of $339.05 were owed for extra days (beyond the three days that appellant paid for when he rented the car) and for mileage charges. On December 11, 1974, after unsuccessful attempts to reach appellant by telephone, Ford filed a private criminal complaint charging appellant with obtaining a motor vehicle by fraud.[1] Ford filed this complaint with the District Magistrate, who approved the complaint on the same day; the complaint then made its way to the District Attorney's office, where it was marked "Approved" on December 31, 1974.

On June 10, 1975, the Commonwealth filed a petition for extension of time under Rule 1100. About the same time,

---

1. The Vehicle Code, Act of April 29, 1959, P.L. 58, § 1220; 75 P.S. § 1220 (1971). This section was repealed by, and has no equivalent in, the new Vehicle Code.

   Because of our disposition of appellant's Rule 1100 claim, we need not discuss the propriety of using this criminal statute for what appears, from the facts stated and from certain testimony at trial, to be collection of a private debt. *See Commonwealth v. Gallo*, 473 Pa. 186, 191, 373 A.2d 1109, 1112 (1977), *rev'g* 236 Pa.Super. 557, 345 A.2d 747 (1975).

appellant filed a motion to dismiss the indictment for failure to comply with Rule 1100.[2] On July 9, 1975, the lower court granted the Commonwealth an extension of time, and denied appellant's motion to dismiss. Appellant was tried and convicted on August 11, 1975. In post-verdict motions he contended and he contends here, that the petition for extension was not timely and therefore should not have been granted.

Appellant's trial had to begin within 180 days from the date on which the complaint was filed. Rule 1100(a)(2). If the Commonwealth needed an extension, it had to request it within the same period. Rule 1100(c); *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976). A petition for extension may not be allowed *nunc pro tunc.* *Commonwealth v. Shelton, supra; Commonwealth v. Woods,* 461 Pa. 255, 336 A.2d 273 (1975). If December 11, 1974 is taken as the date when the complaint was filed, the 180-day period ran on June 9, 1975,[3] in which case the petition for extension was untimely and should have been denied. *Id.*

The Commonwealth argues, however, that the complaint was not "filed" when it was filed with and approved by the District Magistrate on December 11, 1974, but rather when it was approved by the District Attorney's office on December 31, 1974. From December 31, the run date would have been June 29, 1975, making the petition for extension timely. The Commonwealth supports this argument by citation of Pa.R.Crim.P. 133 and 134, which provide in pertinent part:

Rule 133. Complaint: Police and Private Affiants

. . . . . .

**2.** The docket does not record appellant's motion to dismiss. However, the docket does show the lower court's order denying the motion, on July 9, 1975. It is therefore evident that the motion was filed timely, under Rule 1100(f).

**3.** The Commonwealth does not argue that the period was extended by exclusions under Rule 1100(d). It did so argue in its opposition to appellant's post-verdict motions, but there is nothing of record to support its argument.

(B) Private Complaints

1. When the affiant is not a police officer as defined in Rule 51(C) and the offense(s) charged include(s) a misdemeanor or felony which does not involve a clear and present danger to any person or to the community, the complaint shall be submitted to the attorney for the Commonwealth, who shall approve or disapprove without unreasonable delay.

. . . . .

3. If the attorney for the Commonwealth

(i) approved the complaint, he shall indicate his decision on the complaint form and transmit it to the issuing authority.

. . . . .

Rule 134. Issuance of Process Pursuant to Complaint

(a) In any proceeding initiated by complaint, the issuing authority shall ascertain that:

1. the complaint has been properly completed and executed;

2. there is probable cause for the issuance of process;

3. when prior submission to the attorney for the Commonwealth is required, that he has approved the complaint.

(b) Upon ascertaining the above matters, the issuing authority shall

. . . . .

(2) Issue a summons or warrant of arrest as the case may be.

Here, it will be observed, the issuing authority and the complainant (Ford) did not follow the directions of, respectively, Rule 134(a)(3) and Rule 133(B)1; they proceeded backwards. The Commonwealth is therefore correct that there was a defect in the complaint. This defect, however, was immaterial, for defective or not, the complaint initiated

criminal proceedings against appellant. "[I]t is clear that Rule 1100 contemplates the commencement of the running of the mandatory period at the point criminal proceedings are initiated." *Commonwealth v. Mitchell*, 472 Pa. 553, 559, 372 A.2d 826, 829 (1977).

In *Mitchell* the Commonwealth contended that in a case involving an arrest pursuant to a warrant, the Rule should begin to run from—in the Supreme Court's words, "the complaint should be deemed filed as of"—the preliminary arraignment, since criminal proceedings do not really get under way until the arrest is made and the suspect preliminarily arraigned. The Supreme Court rejected this contention, in part on the ground that

> [i]n the situation of an arrest pursuant to a warrant, the complaint is filed prior to arrest, and thus considerations such as disruption of employment, curtailment of associations, subjection to public obloquy, and creation of anxiety, *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972); *Commonwealth v. Silver*, 238 Pa.Super. 221, 357 A.2d 612 (1976), are brought to bear prior to arrest. *Id.*, 472 Pa. at 561, 372 A.2d at 830.

This analysis must apply here. As we said in *Commonwealth v. Silver*, 238 Pa.Super. 221, 357 A.2d 612 (1976),

> [w]hen a written complaint is filed . . . prosecutorial forces are quickly brought to bear against the named individual. If he is not already in custody the issuing authority, upon approving the complaint, will issue a summons or warrant of arrest. *See* Pa.R.Crim.P. 134 and 102. If a summons is used the defendant will be commanded to appear for a preliminary hearing, Pa.R.Crim.P. 110; if he fails to comply an arrest warrant will follow, Pa.R.Crim.P. 113. If an arrest warrant is used the defendant will be taken without unnecessary delay for a preliminary arraignment, Pa.R.Crim.P. 122, 130, which will be followed within three to ten days by a preliminary hearing. Pa.R.Crim.P. 140.

It is clear that this activity, whether it be complaint followed by summons or arrest, or arrest followed by complaint and preliminary arraignment, has immersed the defendant in the intricacies of substantive and procedural criminal law. The defendant has been confronted "with the prosecutorial forces of organized society," *Kirby v. Illinois* [406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)]; *see Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), and must begin to deal with the consequences of those forces. *Id.*, 238 Pa.Super. at 229–30, 357 A.2d at 616.

It is true that in the present case, as far as I can tell from the record, no warrant or summons was issued immediately upon the December 11 approval by the District Magistrate. However, it is plain from Rule 1100 that the actual issuance of process is not the event that triggers the running of the Rule; if it were, subsections (a)(1) and (2) would read differently. It thus appears that the Supreme Court, through its Rules Committee, has determined that criminal proceedings commence when process may potentially issue, rather than when it actually does issue. This interpretation is confirmed by the Court's rejection in *Commonwealth v. Mitchell, supra,* of the Commonwealth's contention that the Rule should start to run from the preliminary arraignment. Here, a warrant or summons could have issued solely on the basis of the District Magistrate's approval of the complaint; the District Attorney's approval or signature would not have been required. *See* Pa.R.Crim.P. 111, 120.

I would, therefore, hold that Rule 1100 started to run from the date on which the complaint was filed with and approved by the District Magistrate. From this conclusion it follows that the Commonwealth's petition for extension was untimely, and that appellant's motion to dismiss should have been granted.

CERCONE, J., joins in this opinion.