J-S07029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM TERRY LEDFORD | |
| Appellant | No. 966 MDA 2013 |

Appeal from the Judgment of Sentence of December 6, 2012
In the Court of Common Pleas of Huntingdon County
Criminal Division at No.: CP-31-CR-0000260-2011

BEFORE:  MUNDY, J., WECHT, J., and FITZGERALD, J.[*]

DISSENTING STATEMENT BY MUNDY, J.:          **FILED AUGUST 05, 2014**

I respectfully dissent from the Majority's decision to reverse and remand for a new trial.  In my view, the trial court did not abuse its discretion when it denied Appellant's request for a self-defense instruction.

Traditionally, to receive a self-defense instruction, a defendant must present some evidence from any source that satisfies each of the following three elements.

> [A]s provided by statute and as interpreted through our case law, to establish the defense of self-defense it must be shown that[:] a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have **reasonably** believed that he was in **imminent** danger of death or great bodily harm, and that there was a necessity to use such force in order to save

_____

[*] Former Justice specially assigned to the Superior Court.

> himself therefrom; and c) the slayer did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Mayfield*, 585 A.2d 1069, 1071 (Pa. Super. 1991) (*en banc*) (emphases added); *accord Commonwealth v. Hansley*, 24 A.3d 410, 421 (Pa. Super. 2011), *appeal denied*, 32 A.3d 1275 (Pa. 2011). Here, the Commonwealth acknowledges, and the Majority correctly notes that Appellant had no duty to retreat inside his own apartment. Commonwealth's Brief at 30 n.2; Majority Memorandum at 18. However, I must disagree with the Majority's resolution of factor (b), "that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself therefrom." *Id.*

The Majority concludes that there was sufficient evidence from Appellant's taped statement to the police to satisfy this element. Specifically, the Majority cites Rex Cuff's testimony that Appellant was terrified, that Appellant told Cuff that Shoop had previously threatened to kill them, that they were planning to buy additional locks for the door having secured it with a belt, and that "[w]hen Shoop arrived at [Appellant]'s apartment, he repeatedly pulled on [Appellant]'s door and challenged [Appellant] to come outside." Majority Memorandum at 17.

In this case, Appellant's own statement to the police relates that he and his friends had shut themselves inside his apartment. N.T, 9/21/12, at 100. They further secured themselves inside by barricading the door and

- 2 -

securing it with a belt. *Id.* Although Appellant's statement indicates that the belt was getting tighter, there is no evidence in the record to suggest that Shoop, or any other person, had even slightly entered Appellant's apartment. *Id.* at 102, 104. In my view, this renders Appellant's shooting pre-emptive, not defensive. *See, e.g.*, *Commonwealth v. Harris*, 281 A.2d 879, 880 (Pa. 1971) (concluding that self-defense did not exist where the defendant shot a milkman through his closed front door after hearing a noise as "no entry had been made"); *Commonwealth v. Correa*, 648 A.2d 1199, 1202 (Pa. Super. 1994) (concluding, "[the defendant] could not have believed that he was in imminent danger from behind a locked door[]"), *abrogated on other grounds*, *Commonwealth v. Weston*, 749 A.2d 458, 460-462 (Pa. 2000).

Based on the foregoing, I conclude that Appellant did not, as a matter of law, present evidence that he "reasonably believed that he was in imminent danger of death or great bodily harm[.]" *Hansley*, *supra*. Therefore, Appellant was not entitled to the self-defense instruction in this case.[1] Accordingly, I respectfully dissent from the Majority's decision to the contrary and from its decision to reverse and remand for a new trial.

_____

[1] To the extent my reasoning as to factor (b) differs from the trial court's, I note that as an appellate court, we may affirm the trial court on any legal basis supported by the record. *Commonwealth v. Doty*, 48 A.3d 451, 456 (Pa. Super. 2012).